May it please the court, my name is Estina Barlow and I represent Mona Salcida Murillo, who's the plaintiff and the appellant in this case. I'd like to reserve two minutes for rebuttal, please. If I could, I'd like to focus on two issues this morning. The first is joinder, because the district court made a legal error that requires reversal, at least as to Lopez and Garcia, the laundry supervisors. The district court overlooked the fact that Ms. Murillo's The wardens, the kitchen supervisors, and the laundry supervisors all participated in or were deliberately indifferent to the denial of Ms. Murillo's work boots, which led her to fall in the kitchen and sustain serious injuries. Were those claims dismissed without prejudice due to the joinder? Yes, they were, Your Honor. And have they been refiled anywhere or could they be refiled? They have not been refiled. At this point, they could not be refiled due to the statute of limitations. But wouldn't the statute of limitations have run, oh now, but they could have been refiled as soon as the joinder was dismissed because presumably the statute would have been told pending their joinder in the case. At the time, they could have been refiled. Right, but now it's gone. Can you address the standard of review? Because I know you're saying that this should be de novo because it's a legal question, but even the way you just described it is very fact intensive, right? And so I don't, I mean, if it's a factual question about whether it's transaction, the same transaction or occurrence, doesn't that get us into abuse of discretion land? I don't think so, Your Honor. Under Rush v. Sport Chalet, the satisfaction of Rule 20's prerequisites is reviewed de novo. And I don't think the cases the defendants cite are to the contrary because they're speaking to the joinder inquiry as a whole rather than those prerequisites. And I recognize that to evaluate whether a complaint, whether claims arise from the same transaction or occurrence requires a close analysis of the complaint and the facts alleged, but these same requirements appear elsewhere in the Federal Rules of Civil Procedure and the court reviews them de novo in those contexts as well. So for example, under Rule 15, whether a complaint relates back turns on whether the amendment arises from the same transaction or occurrence as the original, and this court reviews that question de novo. The same is true for the other prerequisite, whether there's a common question of law or fact, that's a prerequisite for permissive joinder under Rule 24b, and this court has held that that's a legal question that's reviewed de novo, even though... Yeah, it's interesting because common question of law doesn't get, I mean, I'm not sure if you can treat the two differently, but in my mind, common question of law leans more towards the de novo review because it is a legal question. You're analyzing, you know, whether the legal questions are the same, but once you get into transaction or occurrence, the inquiry almost inherently involves a factual analysis which we normally defer to the district court on. Well, that's one reason I think that Rule 15 is a really helpful analogy because there the requirement is also a common transaction or occurrence, and this court reviews that de novo, and I think that it's, at the end of the day, the question is whether the allegations suffice to satisfy the prerequisites of Rule 20, and that's every bit a legal question as whether the allegations in a complaint state a claim. It requires a lot of engagement with those allegations, but is still a legal determination at the end. Just so I understand your theory on, because we have quite a bit of precedent that says that the same transaction or occurrence termination is an abuse of discretion, right? You acknowledge that, and then we have a few cases that you've cited that talk about it being de novo, but in those cases, as my understanding is, it is very much sort of a legal, it's a legal question whether or not it's the same transaction will turn on a legal inquiry. So what is your theory for, are you just saying some of these cases that we have are wrong, like Johnson versus High Desert State, President Cochran, some of these are wrong, or do you have a theory that explains? And I thought I heard maybe your view is that the overarching thing is abuse of discretion, but the particular issue here is it's a legal question. That seems almost backwards to me. It seems to me like generally you zoom out and it becomes more of a legal question, but when you get in, if it's factual, then you will review it for a factual question, for abuse of discretion. But you're saying you think it's the opposite of that. Yeah, I think all of this court's cases can be reconciled along the lines I'm describing, where the question of whether defendants can be joined is a legal question, but then the district court has discretion after it's determined whether the parties can be joined to take considerations of fairness and prejudice into account when deciding whether to sever claims. And so in here, because the district court didn't get to those latter issues, you think it's purely a legal question in this case, but if it were sent back, the subsequent inquiry would in theory, under your view, be abuse of discretion. That's correct, Your Honor. And I think if you take a close look at some of the cases that the defendants have cited, they're also doing exactly the sort of inquiry that I'm talking about. So this NDV Bank of America is a really helpful example where when the court is talking about the prerequisites, it's just determining whether it thinks those requirements are satisfied without deferring to or even engaging with the district court's opinion. But then when it talks about practical impediments to litigation or the risk of duplicative discovery, the court is deferring to the district court and engaging with its reasoning and applying more deferential review. And I do think, you mentioned that this structure seems sort of backward, but I do think it's one that we see elsewhere in the federal rules. I mentioned Rule 24B, which the requirements are reviewed de novo, but the inquiry as a whole is reviewed for abuse of discretion, the ultimate decision on permissive intervention. We think the same rule applies here. And the last point I'd want to make on that is if you're skeptical of our reading of Rush and think that we're overstating it, you don't have to take our word for it. We didn't cite this case in our briefs, and I apologize for that, but the Seventh Circuit has read Rush the same way in a case called Dorsey v. Varga. That's at 55 F. 4th 1094. And that court, like Rush, held that the prerequisites of Rule 20 are reviewed de novo, even though the overall inquiry is reviewed for abuse of discretion. I'd like to spend just a minute talking about exhaustion, if that's all right. There's one argument that we think... I mean, just to streamline this a little bit, you agree that most of these were not exhausted. Your argument seems to be he didn't need to because it would have been futile to do so. Yes. Our argument is that administrative remedies weren't available to her because there are various arguments. I think the most straightforward is because CDCR gave her incorrect information when it rejected her grievance about the fall in the kitchen. This is the rejection letter that said, please rewrite your appeal to address only Workman's Comp, as all other issues have already been addressed. That tells Ms. Maria... So you're relying more on... Because there would be two, in theory, I think two, maybe available. One would be that the person's been given the wrong information as to how to do it, right? Maybe it's an opaque process. The other is intimidating the prisoner, right? It sounds like you're relying more on the former. I think we have both arguments. I just think the most straightforward is to focus on the fact that she received... Because on the latter one, the problem for intimidation is just so many grievances continue to be filed here. So it's a little bit hard factually to say that they're intimidating. We think there's still evidence that she was actually deterred from filing grievances. For example... She could have had more. Yes. I think that's right, Your Honor. And I do think we see that in the record where she writes a letter. She starts using informal... Oh, I believe she could file more. She seems very, very capable of filing grievances. Yes. I'd emphasize, I think, that the incorrect instructions argument is the most straightforward, but we think there are a lot... I mean, so when a prison makes... If a prison did make a mistake, and I don't know, but assuming in your favor that the prison makes a mistake, how often does a prison have to make a mistake before... That just one mistake means that the grievance process is now waived or... I think under Nunez- For all grievances? I mean, I can understand, I suppose, the argument for that grievance is waived, but for all of them? I think that under Nunez v. Duncan, the question is whether the incorrect information prevented the plaintiff, the inmate, from exhausting the claims at issue. And here, the incorrect instructions she received effectively said, don't file further grievances about the fall in the kitchen. And so that would have covered the claims that we're seeking to bring here with respect to both the wardens and the kitchen supervisors, all of which stem from that fall. And I'm trying to... There's so many different grievances, but were all of the people named in that grievance that you're saying, all of the various people named that you're saying they were waived for? I thought some of them weren't waived. They said the kitchen team or something like that. Sure, Your Honor. So the wardens were expressly named in that grievance. The kitchen supervisors weren't, but that... I don't think that's a problem for this argument, and I can explain why if I can just take a little bit more time to do so. I see I only have 10 seconds left. You're fine. If Judge Van Dyke wants to keep you up there, I'd like to turn this around. Great. I do think that this is an important point. From Ms. Maria's perspective, the incorrect instructions she received were, don't file any further grievances about the fall in the kitchen unless they're related to workers' compensation. From her perspective, that means don't file any further grievances about the wardens and also don't file any further grievances about the kitchen supervisors. The whole discussion about the regulations that require Ms. Maria to name the staff that were involved in misconduct aren't relevant to this argument. They're relevant to our improper screen-out argument, but under Nunez v. Duncan, when a prisoner receives incorrect information, she just has to take reasonable and appropriate steps to exhaust. She doesn't have to show that she filed a grievance that would have sufficed to exhaust. Okay. We'll give you time for rebuttal. Thank you very much. We'll hear from the appellee. Good morning, Your Honors. Deputy Attorney General George Morris on behalf of the police. I'll start with Joinders since that's what my friend on the other side started with. The standard of review should be abuse of discretion. I know that council here said that Rush states that it's a de novo review, but I think that that was an oversimplified stating of the standard because in the Rush case, it was just a legal conclusion that was being addressed there. So the question in Rush was, was the landlord and the tenant jointly and several liable so that they had to be joined together as a party? Now, that is a legal question, and so that's what Rush addressed. But as Judge Van Dyke noted in Johnson v. High Desert, this court said that the standard of review is abuse of discretion, but you look at any underlying legal conclusions de novo. But here, this is a factual, intensive inquiry, and it's Joinder under 20, which is permissive Joinder. So this is a may-join these parties. I can't think of a more analysis that's more fact-intensive and deserves scrutiny than trying to figure out with 20 different defendants and seven different claims over a large period of time that the court has to be able to use its discretion to determine whether or not these facts are related. And I think that the court here did, and I think Judge Seaborg did not abuse his discretion in looking at all of these different claims against all of these different defendants and deciding, which was proper under Coughlin. I mean, that seems to be your best argument, because when you start parsing it out, you can definitely see why you could come to a different conclusion. I mean, there is definitely some overlap here, and you could see a judge reaching a different analysis to say these are the same transaction or occurrence, depending on how broadly you interpret that language. I mean, I think generally it's interpreted pretty broadly. But if it's abuse of discretion, it's hard to see how he abused his discretion here. Well, I agree with everything that you said there, Your Honor. And I think that that's why, because when you get into factual, intensive analysis like this, it is discretion that is being used by the judge. And there should be leeway there for the judge to do that. And Coughlin says that that's okay to do, that you can take the first claim and sever the other ones without prejudice. And as Your Honor has noted, Ms. Murillo could have filed these claims. There was no statute of limitations issue, so there was no prejudice there whatsoever. I mean, but she was representing herself at the time, correct? I mean, I don't know that that has any bearing on it, but she didn't have the capable counsel she now does to sort of highlight that issue. Well, Your Honor, I understand the pro se's, the pleadings are construed more liberally, but they are still required to follow the federal rules of procedure and follow the instructions by the judge. And so she could have refiled and did not. And again, there was no prejudice because at the time there was no statute of limitations issue. So moving on to the exhaustion issue, and as Your Honor has again also noted, there are a lot of different grievances, but it really is pretty simple because there's four defendants in this case and she did not exhaust for any of them. The Officer Lepe, there was one grievance against her. So it seems to be clear, I think there's agreement that she didn't exhaust. The question is, was she, I guess there's really two questions. Was she told precisely why they were being denied? Was it being denied properly? And then I guess there's in theory this intimidation point too. Right. Okay. So there's one grievance in which Ms. Murillo says, I wasn't really provided proper instructions, but that is belied by the record, which there's two different letters from the third level review that says, if you disagree with the amended response, you must appeal to the third level. Those instructions were clear and unambiguous. This is the one that went up to the third level, got bounced back to the second level. Correct, Your Honor. There's possibly some ambiguity in the grievance itself, but there was also a letter attached to it. Is that what I'm... That's correct, Your Honor. And your position is that it's clear enough from the letter, even if the grievance itself was ambiguous, it's clear enough from the letter that you need to continue on with this if you... Correct, Your Honor. Yes. But as I understood counsel, is this the same grievance where counsel was basically... It's a different grievance counsel's talking about saying that you need to basically split these. These claims have already been addressed, so that's a different one. Is that right? That is a different one. That's the one that was rejected. That's the one. And it seemed to me that's where they were putting most of their emphasis this morning, was that those rejections, because the person kept saying you need to get rid of some of these and trim it down, that I guess that they're too confusing, I guess. I think that's their argument. I think it's something that affects... Yeah, so the grievances against Castillo and Lipp, those are... I think there's no issues with those, and I didn't hear counsel say anything about that. The only one that they focused on was this one grievance that... The rejected grievance. The rejected grievance. And I think it's... For having too many issues. Correct. Some of the issues of which the prison was taking the position that you've already grievanced that in a prior grievance. Correct, yes. So in that grievance, I think the one important part about the whole thing though is that that grievance really doesn't have any bearing on the case as it stands right now. Because even though that grievance named the wardens, it didn't grieve the claim that's actually live in this case right now, which is claim one. And that claim is about workplace harassment. And the grievance against... That got screened out and named the wardens did not cover that issue. So even if we talk about what that grievance... What happened with that grievance, it still doesn't cover the wardens and it still doesn't really have any bearing on the claim one, which is that issue right now. But that grievance was actually properly screened out. There was no doubt that there were at least two issues that were being grieved. One was about work boots and one was about receiving workers' compensation documents. And those are two separate issues and they require two separate inquiries. So the screen out there was proper. Now the question is, when they said, the grievance reviewer said, you have already grieved the issue of work boots, only include the workers' compensation issue. That was not error either. Because it sounds like they're reading that as saying you have... They're almost reading that to say you've grieved the work boots issue and you have completed the grievance. But they're just saying you've grieved it. If that grievance about work boots has got its own problems, I don't... Yes. And that grievance about work boots, at the time she had submitted it, but it was not resolved. And so really you look from the perspective of the reviewer, they see within the three-week time period, one grievance about the laundry supervisor and said, he hasn't provided me work boots. And then pretty much the exact same grievance three weeks later, except she just added in that she slip and fell as a result. So it was proper to say, this issue against the laundry supervisor about work boots, you've already grieved that. So you don't need to include that anymore. You can separate out the workers' compensation claims. And that was permissible under the regulations. And I think that that's something that the grievance reviewer had the ability to do. Because again, reading it on its face, those two grievances were the same. So there was no improper screen out in that regard. And then again, if we talk about the overall arching problem of intimidation, I think Your Honors hit it on the head when you said that she continued to file grievances. There was no intimidation that deterred her from filing any of the grievances. Now, she might say... One of her arguments was that you don't actually have to be deterred. Haven't they argued that you don't have to actually be deterred? So for this issue, the... Reply briefly. He said actual deterrence is not what the case law requires. Well, I think it's McBride that said that actually... I don't know if the terms are... In Turner versus Broadside, which is what McBride's relying on, it is required. But I think their position is that you don't have to have a deterrent. I take it your position is you actually have to be deterred. Well, I think that you have to at least show that you were unable to exhaust because of these threats. And that is just simply not the case here. And that's what's really important here. But couldn't she argue that she wasn't deterred from filing him, but that the fact that she was filing so many meant that they weren't giving her... You know, they were treating her differently. They were not giving her as much scrutiny over these. Would that be enough to... I don't think that was the argument that was made, Your Honor. I don't think that there's anything in their answering brief that even suggests that. I think what she said is one was it was... One grievance wasn't properly screened out because I got confusing instructions. And then she said another one didn't exhaust because they didn't give me all the information I need to exhaust. That has nothing to do with being threatened or retaliation or anything like that. So the reasons for her failure to exhaust are not related to retaliation. So I'm saying I'm out of time, but in summation, I would just say, the district court properly granted summary judgment and that should be affirmed and properly severed the claims in the Joinder order. And that also should be affirmed. Okay. Thank you. Thank you. We'll give you two minutes for rebuttal. I have two quick points I'd like to make about Joinder. First, I disagree with the defendant's description of Rush. And I think if you take a look at the district court decision in that case, as against the Ninth Circuit decision in that case, they weren't disagreeing about a question about the ADA. They were disagreeing about whether an allegation of a landlord-tenant relationship rose to the level of the same transaction or occurrence. The other thing I'd just like to flag for Your Honors on the Joinder issue is that to the extent you're concerned, you think it's maybe understandable that the district court missed some of these allegations and the through Ms. Murillo did highlight them in a motion for reconsideration to the district court. And so I'd encourage you to take a look at ECF number 12 if that's a concern. Regarding exhaustion, I just want to clarify the argument that I'm emphasizing today, even though we're not conceding the other arguments in the brief. You're right, Your Honor, that I was just talking about the grievance about her fall in the kitchen, which is a different grievance from the one that went back and forth between the different levels of review. This is the one that was rejected. Yes, and I think that looking at the language on ER 141 helps reveal why the instructions were incorrect. The CDCR told her, please rewrite the appeal to address only workers' compensation, as all other issues have already been addressed. That tells her, do not file additional grievances about anything related to your fall in the kitchen. And that's in direct conflict with what they said at the time. I also want to emphasize quickly that this is a separate argument from our argument that the claim was improperly screened out. Even if they had been right and correctly screened the grievance out for involving multiple issues, they can't give her incorrect instructions in the case. Thank you. Thank you to both counsel for your arguments in the case and thank you for your pro bono representation. It's very helpful to the court. The case is now submitted.
judges: NELSON, COLLINS, VANDYKE